JOHN W. TRUE, Petitioner,

*vs.*

MAINE CENTRAL RAILROAD COMPANY.

FRED H. CHANDLER, Petitioner,

*vs.*

MAINE CENTRAL RAILROAD COMPANY.

Cumberland.    Opinion June 1, 1915.

*Assessment of Damages.    Eminent Domain.    Injunction.    Mandamus.    Public Laws 1864, Chap. 231.    R. S., Chap. 51, Sec. 33.    Right of Way.*

The County Commissioners ordered and directed the railroad company to construct and maintain, upon the land and across the tracks of said railroad, cattle guards, cattle-passes and farm-crossing; and an underpass, fourteen feet high and twelve feet wide.

*Held:*

1.   That the statute authorizing the County Commissioners to order the corporation to make and maintain cattle-guards, cattle-passes and farm-crossings does not contemplate such a structure as is here prescribed.

2.   An appeal, in these cases, lies only to the assessment of pecuniary damages.

3.   The County Commissioners, in a case of this kind, cannot order a cattle-pass, or any other structure that will exceed the full measure of damages.

4.   They cannot assess the full measure of damages and order, in addition, any of the structures authorized by statute.

On exceptions by the defendant.   Exceptions sustained in each case.

This is a petition for writ of mandamus to enforce a judgment of the County Commissioners directing the railroad company to construct and maintain cattle passes and an underpass.   Upon hearing, the Justice ordered a peremptory writ to issue, and the defendant excepted to said ruling.

The case is stated in the opinion.

*McGillicuddy & Morey*, for plaintiffs.

*Symonds, Snow, Cook & Hutchinson*, for defendant.

SITTING: SAVAGE, C. J., SPEAR, CORNISH, KING, HANSON, PHILBROOK, JJ.

SPEAR, J.   In 1870 the defendant company purchased, through the lands of the present petitioners, of the then owners a right of way for the location of its railroad tracks.   In 1912 the defendant company took by right of eminent domain a strip of land belonging to the petitioners from 20 to 30 feet wide on the westerly side of, and adjoining the old location.   After acquiring the increased width by eminent domain, thus owning the original location in fee simple and the widening in easement, the defendant company raised the grade along the new line of the road passing through these farms to a height of about 20 feet.   Over this new grade access from one part of these farms to the other was made impossible for any practical purpose except by the erection of underpasses.

After the new road bed had been completed, and within the time limited by law, the owners of the land taken by right of eminent domain filed a petition under R. S., Chap. 51, Sec. 33, for the assessment of land damages, and for the erection of underpasses.   Upon this petition all the necessary preliminary notices were given and a hearing ordered on the 11th day of September, 1912, at which the parties upon both sides appeared with their counsel and were fully heard.   The County Commissioners, on the second Tuesday of January, 1913, rendered their judgment that the damages sustained by the petitioners were estimated "to be nothing" and further ordered and directed "that the said railroad company construct and maintain upon the land aforesaid and across the track of said railroad, cattle-guards, cattle-passes and farm-crossing as follows:   An underpass

fourteen (14) feet high and twelve (12) feet wide, located" etc. From this order no appeal was taken by the defendant company and the plaintiffs have brought a writ of mandamus to enforce the judgment. Upon this state of facts the sitting Justice ordered a peremptory writ to issue. The case comes up on exceptions to this ruling. The statute authorizing this order reads as follows: "Said commissioners shall order the corporation to make and maintain such cattle-guards, cattle-passes, and farm-crossings as they think reasonable; prescribe the time and manner of making them, and consider this work in awarding pecuniary damages."

First. Does the statute authorizing the County Commissioners to order the corporation to make and maintain cattle-guards, cattle-passes and farm-crossings contemplate such a structure as is here prescribed? We are of opinion that it does not. These structures were first authorized by the Public Laws of 1864, Chap. 231, and were regarded as incidental to the assessment of damages as an analysis of the chapter will show. No amendment has been made except one in 1893 relating to the right of appeal.

While the language of the present statute differs from that of the earlier one, the change was made in the revision of 1871, not by amendment, but by the revisors for the purpose, not of varying the original meaning, but more clearly and succinctly expressing it. The terms, cattle-guard, cattle-pass and farm-crossing, have significance, only, in connection with the construction of a railroad that has divided a farm in such a manner as to expose the stock of the owner to the danger of passing trains, to deprive him of access to some part of his pasture or some part of his tillage land. These terms, separately analyzed, each have a distinct and limited application. Cattle-guard signifies some kind of a device alongside a railroad crossing to keep cattle off the track. Cattle-pass applies to a narrow passage-way, under a railroad track, wide enough and high enough to admit the passage of a cow, horse or ox to and from a pasture. Farm-crossing means a roadway over the track at grade, for the purpose of reaching the tillage land, cut off. Without further observation, it is evident that the structure, which the County Commissioners ordered in the present case, did not come within their jurisdiction, by any of the provisions of the statute under which they assumed to act. There is no pretense that it was a cattle-guard. It could not be regarded as a cattle-pass as its dimensions were 12 feet

in width and 14 feet in height, making it a veritable roadway, wide enough for two ordinary teams to pass each other. It is evident that the cattle-pass intended by the statute could never be expanded into a passage-way of this magnitude. Such a structure, capable of bearing an engine of a hundred tons, would require heavy masonry and an iron bridge, at a minimum cost of $12,000 and a maximum cost of $17,000, in each case, as estimated by the engineers, an expense all out of reason in view of the end to be attained by the enactment of the statute. Nor was it a farm-crossing for the reason already stated. Accordingly, the structure ordered by the commissioners was not authorized by the statute, and their order was beyond their jurisdiction and void.

We might pause here but as the case will be in order for trial again, it may not be deemed improper to suggest a second reason why the present order was nugatory, in order that the same error may not be repeated in case of another hearing. The second question is: Does the statute, authorizing the County Commissioners to order a cattle-pass, contemplate that they may prescribe a structure that shall exceed in cost the full amount of damages to which the individual may be entitled, without the right of appeal? To the order of a cattle-guard, cattle-pass and farm-crossing, there is no appeal. An appeal lies only to the assessment of pecuniary damages; to the order for the cattle-pass it is expressly denied, as will appear from the last sentence of Sec. 34, R. S., Chap. 51, which reads: "In case of appeal by either party, the only question in issue shall be the amount or measure of damages on the terms and conditions imposed by the commissioners."

This interpretation is made certain by the clause in Section 33 which provides: "And if the corporation after forty-eight hours' notice in writing to its president or superintendent, neglects to commence the work or complete it within a reasonable time," etc., the owner may apply to the court for summary process to enforce the specific performance of the order. Section 36 providing for appeal, "more than thirty days after the report of the commissioners," also confirms this construction, as it would otherwise be inconsistent, in time, with Section 33. The evidence shows that the two underpasses ordered would cost from $24,000 to $37,600.

Accordingly, if the commissioners had jurisdiction to order a cattle-pass of unlimited dimensions, it would yet be clearly nugatory

in this case, as the cost of the award would many times exceed the full measure of damages to which the petitioner would be entitled, thus imposing a disproportionate and unreasonable burden upon the defendant without any right of appeal. Such a proceeding would be in defiance of due process of law. It then follows that the County Commissioners in a case of this kind cannot order a cattle-pass, or any other structure that will exceed the full measure of damages. Nor can they assess the full measure of damages and order, in addition, any of the structures authorized by statute. They can assess the full measure of damages and order one of the structures prescribed in part payment, as was expressly provided in the original statute of 1864, or ''consider the work (the cattle-pass) in awarding pecuniary damages,'' as said in the present statute.

Inasmuch as the present proceedings are declared void for causes not affecting the merits, new proceedings may be begun within one year under R. S., 1903, Chap. 51, Sec. 31.

*Exceptions sustained in each case.*